# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| JOSEPH DANIEL BROWN, )<br>)<br>Claimant, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>*Commissioner of Social Security*, )<br>)<br>Defendant. ) | Case No. CV411-152 |

## **REPORT AND RECOMMENDATION**

At the age of 35, claimant Joseph Daniel Brown was hospitalized for five days due to congestive heart failure. (Tr. 263-96.) Now 40, he claims that he is entitled to social security disability and supplemental income benefits for his heart problems, hypertension, borderline obesity, and depression. (Tr. 15, 125.) He filed an application for benefits on March 3, 2008 alleging that he became disabled on February 22, 2007, the day he was hospitalized. (Tr. 125-33.)

The Commissioner denied his claim initially and on reconsideration. (Tr. 66-73, 76-83.) An Administrative Law Judge ("ALJ") conducted a hearing on October 7, 2009 (tr. 32-61), and entered

an order denying Brown's benefits application on January 29, 2010. (Tr. 16-25.) The Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5.) Brown then filed a complaint for judicial review in this Court, contending that the ALJ erred in reaching his decision. (Doc. 1.) He is correct, and thus this case should be **REMANDED** pursuant to sentence four of 41 U.S.C. § 405(g).

## I. STANDARD OF REVIEW

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted). If substantial evidence supports the decision, the Court will

affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159. This Court cannot substitute its judgment for that of the Commissioner. *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant. 20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether he has met his burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.* Then, at step three, if the claimant's impairment meets or equals a listed impairment, he is automatically found disabled. *Id.* If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.* If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available

in significant numbers in the national economy that the claimant is able to perform." *Id.*

## III. ANALYSIS

This is an unusual case. While the Court takes no position on the merits of Brown's claims, a remand is warranted because the ALJ's opinion relied too heavily on speculation and, on several occasions, misstated the record. Most importantly, at step four of the five-step evaluation, the ALJ erred in his description of key record evidence when discounting the medical source statement of Dr. Willie Epps, D.O, one of Brown's treating physicians. Epps opined that Brown has major work restrictions based, in part, upon his decreased ejection fraction.[1] (Tr. 378-85.) The ALJ, while performing a residual functional capacity assessment, insisted that Brown no longer had a decreased ejection fraction, so Dr. Epps' opinion was entitled to no weight:

> The undersigned has considered the medical source statement issued by Dr. Epps and found it to be <u>un</u>persuasive. Inexplicably, the doctor bases his opinion on the old 18% ejection fraction number, *while completely ignoring later improvements* (Exhibit 9F)! Yet, the doctor also gives the claimant a "fair" prognosis and

---

[1] The ejection fraction is a measurement of the percentage of blood leaving the heart on each contraction. Martha Grogan, M.D., Ejection Fraction: What does it measure?, *available at* http://www.mayoclinic.com/health/ejection-fraction/AN00360 (last visited June 26, 2012).

4

> prescribes exercise (Exhibit 10F/2)... which would be rank malpractice on his part IF claimant still had an 18% ejection fraction. Thus Dr. Epps manages to fall all over himself in stating his opinion, which sounds more like "patient advocacy" than it does a well supported treating opinion. Since the doctor's opinion is contradicted by his own notes, it is afforded no weight.

(Tr. 21 (unaltered from original).) The ALJ explained that Brown's ejection fraction had actually improved from 18% to 35% by October 2007 and had returned to normal by June 2008. (*Id.*) But the record does not support those assertions.[2] Additionally, the Court notes that the ALJ did not offer any support for his off-the-cuff assertion that the "fair" prognosis and exercise recommendations were inconsistent with a low ejection fraction. It appears to be rank speculation, which is forbidden in these proceedings. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (An ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.").

The Court finds no record evidence supporting the ALJ's ejection fraction numbers.[3] No has the Commissioner cited any.[4] (Doc. 13.) As

---

[2] The Court takes no position on whether Brown's ejection fraction actually remained below 30%. Such a finding might entitle Brown to benefits under the step-three listings. The Court will leave that determination to the Commissioner on remand.

[3] After being admitted to the hospital, testing suggested an ejection fraction of less than 20% (tr. 263), estimated at approximately 18% (tr. 275). Dr. Epps

5

best the Court can tell, the ALJ simply misread Brown's treatment records. For the 35% number, the ALJ cites to an October 2007 record which clearly shows an ejection fraction of 18%. (Tr. 364 ("Ejection Frac. 18%").) Below that, the record notes that Brown is "on ACE for EJ Frac <35%."[5] (*Id.*) The notation appears to relate to a prescription for ACE

---

continually noted either a "decreased" or 18% ejection fraction over the next several years. (Tr. 366 (July 16, 2007); tr. 364 (Oct. 16, 2007); tr. 363 (Nov. 13, 2007); tr. 362 (Feb. 13, 2008); tr. 331 (May 14, 2008); tr. 360 (June 24, 2008); tr. 357 (Jan. 21, 2009); tr. 391 (Apr. 25, 2009); tr. 392 (Sept. 14, 2009); tr. 394 (Sept. 25, 2009); tr. 396 (Nov. 21, 2009).)

[4] The Commissioner simply ignores the ALJ's misstatements and insists that Brown's 18% claimed ejection fraction was based upon a one-time measurement and thus did not support Dr. Epps' reliance upon it in his assessment. (Doc. 13 at 12.) He also speculates that had it been such a substantial issue, Brown would have sought additional treatment for it. (*Id.* at 12.) The Commissioner maintains that Epps' source statement is unsupported by "sufficient objective medical evidence." (*Id.* at 13) In order to accept the Commissioner's reasoning, the Court would be forced to engage in a *post hoc* analysis creating reasons out of whole cloth to support the ALJ's conclusion. This the Court will not do, especially where the ALJ so plainly misconstrued the record. *E.g., Watkins v. Comm'r of Soc. Sec'y*, 457 F. App'x 868, 872 (11th Cir. 2012) ("We cannot affirm based on a *post hoc* rationale that might have supported the ALJ's conclusion." (quotations and citations omitted)); *Cook v. Astrue*, 2009 WL 464190 at *5 (S.D. Ga. Feb. 24, 2009); CAROLYN A. KUBITSCHEK & JON C. DUBIN, SOCIAL SECURITY DISABILITY LAW AND PROCEDURE IN FEDERAL COURT § 8:2 (2012 ed.) (collecting cases holding that a court may neither reweigh the evidence in the record nor substitute its judgment for the ALJ's.). As this Court has previously explained, it must "review the decision as delivered by the ALJ," not as the Commissioner wishes it had been delivered. *Cook*, 2009 WL 464190 at *5 (emphasis added) (citing *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985)).

[5] According to the Heart Failure Society of America, "ACE inhibitors are recommended for routine administration to symptomatic and asymptomatic patients" with an ejection fraction less than 40%. Heart Failure in Patients with Reduced Ejection Fraction, Ace Inhibitors, *available at* http://www.heartfailureguideline.org/ace_inhibitors/73 (last visited June 26, 2012).

inhibitors, not an assessment of Brown's current ejection fraction percentage. In fact, Brown remained on Lisinopril, a well-known ACE inhibitor, throughout the administrative proceedings. (Tr. 170; 90); *see* Lisinopril, PubMed Health, *available at* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000917/ (last visited June 26, 2012). Next, the ALJ cites to a June 2008 treatment record showing that claimant had a "normal" ejection fraction. (Tr. 21.) Admittedly, the text is difficult to read, but the Court is confident that it actually shows a "Decreased Ejection Fraction," *not* a normal ejection fraction. (Tr. 330.) Absent any support in the record, the ALJ failed to demonstrate good cause for rejecting Dr. Epps' source statement, and his opinion on that score is simply not supported by substantial evidence.[6]

The ALJ also made multiple references to Brown's history of drug abuse when addressing his depression and credibility. The record shows

---

[6] Generally, the opinions of examining physicians are given more weight than those of non-examining physicians." *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). There is no dispute that Dr. Epps was a treating physician. An ALJ, however, may accord more or less weight to such a source if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991); *Garred v. Astrue*, 383 F. App'x 820, 822 (11th Cir. 2010). Good cause exists for rejecting a treating physician's findings when that opinion is not bolstered by the evidence or the evidence supports a contrary finding. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *see Crawford*, 363 F.3d at 1159. But here, the ALJ offers no sound basis for discounting Dr. Epps' opinion.

that when Brown was hospitalized in 2007, he admitted marijuana and alcohol use, and a drug screen confirmed that he was under the influence of marijuana, alcohol, and opiates. (Tr. 267 ("Positive for marijuana and alcohol use."); tr. 26 (drug screen).) He apparently reported that he had been prescribed Percocet, which is a well-known opiate. (Tr. 271.) When the ALJ asked Brown about his marijuana use at the hearing, Brown reported that he had not used it since roughly March 2007, around the time of his hospitalization. (Tr. 48.) The ALJ opined, however, that Brown had "obvious[ly] lie[d]" about quitting marijuana in 2007 and was still abusing drugs. (Tr. 21.) According to the ALJ, this "established history of drug abuse did not enhance [Brown's] credibility" or "exactly help his heart out." (Tr. 21.) Then, in a complete about-face, the ALJ states that "[o]nce [Brown] stopped using drugs, not only did his heart get better, so did any mental problem that he may have had... the sequence of events is just too remarkable for one to ignore." (Tr. 22 (ellipses in original).)

Nothing in the record suggests that Brown still had a serious problem with drugs. Indeed, the Commissioner concedes that the ALJ "may have misstated Plaintiff's history of substance abuse." (Doc. 13 at

8

22 n.11.) Too, the ALJ's opinion on the matter is internally inconsistent. Just after stating that Brown had obviously lied about quitting marijuana, he insists that Brown made a remarkable physical and mental recovery *after* he ceased using drugs. (Tr. 21 (Brown obviously lied, but "even if [he] were to stop all drug use, his heart condition would still saddle him with the above residual functional capacity"); tr. 22 ("Once he stopped using drugs, not only did his heart get better, so did any mental problem that he may have had… the sequence of events is just too remarkable for one to ignore.").) Even without this conflict, the ALJ's conclusion that Brown's drug use contributed to his physical and mental problems and that quitting had a substantial benefit upon his health is entirely unsupported. In other words, the ALJ's mental health and credibility determinations were based, in part at least, upon unsupported conjecture and speculation rather than evidence of record.

### III. CONCLUSION

Brown claims that the ALJ erred by: (1) failing to follow the treating physician rule; (2) finding his depression was non-severe at step-two; (3) failing to properly evaluate his credibility; and (4) relying upon flawed vocational expert testimony. (Doc. 12 at 2.) The Court finds in

his favor as to ground 1, since the ALJ misstated key record evidence when articulating his reasons for giving Dr. Epps' opinion no weight. Hence, remand is appropriate. *See Rogers v. Astrue*, 2011 WL 434567 at *8 (M.D. Fla. Sept. 16, 2011) (remand appropriate where ALJ misquotes the record); *Meyers v. Astrue*, 2009 WL 3158190 at *14 (S.D. Ala. Sept. 29, 2009) (same); *Lampp v. Astrue*, 2008 WL 906641 at *3 (M.D. Fla. Mar. 31, 2008) (same); *Goulet v. Astrue*, 2008 WL 681049 at *3 (M.D. Fla. Mar. 7, 2008) (same). As a remand is required, the Court takes no position as to Brown's remaining claims. Given the depth and extent of the error as to Brown's first claim, the Commissioner shall reevaluate all of Brown's claims on remand in light of the instructions and analysis set forth above.

Based on the foregoing, this case should be **REMANDED** to the Commissioner for further proceedings consistent with this Report and Recommendation.

**SO REPORTED AND RECOMMENDED** this 26th day of June, 2011.

_____
UNITED STATES MAGISTRATE JUDGE
**SOUTHERN DISTRICT OF GEORGIA**